IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLINTON LEE POORES, AIS# 318593, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-883-CSC |
| | ) | |
| | ) | |
| JEFFERSON S. DUNN, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

I.      **INTRODUCTION**

Clinton Lee Poores, a state inmate, filed this 42 U.S.C. § 1983 action alleging that he was subjected to unconstitutional conditions while housed at Bullock Correctional Facility. (Doc. 1). On March 24, 2022, Poores filed a notice with the Court of his transfer to Limestone Correctional Facility. (Doc. 120). In his Complaint, Plaintiff names as Defendants Jefferson Dunn, Commissioner of the Alabama Department of Corrections and Patrice Richie, Warden at Bullock. Plaintiff seeks monetary damages and injunctive relief against Defendants, but does not specify if he sues them in their individual or official capacities.   (Doc. 1).  Defendants filed an Answer and Special Reports with supporting evidentiary materials, including affidavits and prison documents in which they deny Plaintiff's claims for deliberate indifference.  (Docs.  8, 20, 22, 48, 59, 71). Pursuant to the consent of the Parties, the Court ordered that this case be referred to the undersigned Magistrate Judge for all proceedings including final disposition.  28 U.S.C. 636 (c); Fed. R. Civ. P. 73. (Doc. 19).

After reviewing Defendants' documents, the Court ordered Poores to file a response supported by affidavits or statements made under penalty of perjury and other evidentiary

materials. (Doc. 72). The order specifically cautioned that the Court may, at any time after the deadline for Poores to respond and without further notice, treat a special report as summary judgment motion and, after considering any response by Poores, rule on the motion in accordance with the law. (Doc. 72 at p. 3).  Poores filed responses to Defendants' Special Reports. (Docs. 18, 24, 74, 93, 95, 100, 102, 110). The Court now construes the Special Reports as a motion for summary judgment and, upon consideration of the motion and supporting evidentiary materials, concludes summary judgment is due to be **GRANTED.**

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most

favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.   DISCUSSION

### A.   FACTUAL BACKGROUND

Plaintiff alleges that from April 2019, until he was transferred from Bullock Correctional Facility to Limestone Correctional Facility on March 24, 2022, he was subjected to unconstitutional living conditions and a lack of healthcare resulting in cruel and unusual punishment to him and other indigent inmates for which Commissioner Dunn and Warden Richie are liable.  Specifically, he lists the alleged deprivations as follows:

1.  The law library is not "open all of its posted days and hours" and Plaintiff is not allowed "unhindered access;"

2.  The law library "essentials" are not "updated" or are "damaged;"

3.  Writing pens are not available to him and all inmates;

4.  Records are not kept about "unused postage" and legal mail is delayed;

5.  Notary services are not offered on days as posted in the prison handbook;

6.  Plaintiff is not allowed to create his own schedule;

7.  Smokers are not allowed access to smoking area outside of the dorm;

8.  No smoke detectors are present in Bullock Correctional Facility;

9.  Plaintiff is not allowed to use his CPAP machine;

10. Plaintiff is not provided his allergy and asthma medicine as prescribed by his free-world ENT;

11. The exercise area has an insufficient amount of equipment for the numbers of inmates and access is overly restricted;

12. "Shade" is not provided in Bullock's exercise area;

13.  Inmates are not allowed religious services twice a week;

14. Access to medical care and nail clippers is insufficient;

15. Drinks are not provided at every meal;

16. Food provided "is not good enough for state officials;" and nutritional content is lacking and unsuitable substitutes are used;

17. Bugs are in the cafeteria area due to lack of working insect traps and/or professional exterminators;

18. Cafeteria lighting is uncovered;

19. Insufficient time is provided to eat meals;

20. "Group and mixed party strip-searches" are allowed;

21. Officials use unnecessary violence and taunt inmates;

22. Video cameras are not sufficiently present;

23. Free literature is not provided to indigent inmates;

24. Inmates' personal belongings are not adequately protected during raids and shakedowns;

25. Sanitary and slip-resistant footwear is not provided to the inmates;

26. "Blood borne pathonagen clean up kits" are not provided to inmates;

27. Mops are not sanitized;

28. Sports programs are not sufficiently shown on prison televisions;

29. Fans are improperly mounted.

In addition to the injunctive relief demanded to remedy each of these claims, Plaintiff also demands "one hundred thousand dollars and punitive damages". (Doc. 1 at pp. 16-19). Also, he requests that he be transferred to Limestone Correctional Facility if his post-conviction relief has not been granted by January 1, 2020. (Doc. 1 at p. 17).

B.   **ABSOLUTE IMMUNITY**

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753

(11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).  In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.  The Court will now turn its attention to Plaintiff's claims against the Defendants in their individual capacities for both monetary damages and injunctive relief.

### C.    CLAIMS FOR INJUNCTIVE RELIEF

To the extent that Plaintiff seeks injunctive and declaratory relief based upon the laundry list of claims stated in his Complaint, *see supra*, at pp. 3-4, Plaintiff is entitled to no relief.  Indeed, under Eleventh Circuit precedent "a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen,* 502 F. 3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011); see also, *Zatler v. Wainwright,* 802 F. 2d 397, 399 (11th Cir. 1986) (per curium).  Here, Poores brings claims for injunctive and declaratory relief based on the list of deprivations which he alleges occurred at Bullock Correctional Facility.  Doc. 1 at pp. 2-4.  Because Plaintiff has been transferred from Bullock Correctional Facility and is now housed at Limestone Correctional Facility, his claims for injunctive and declaratory relief are moot and are due to be dismissed.

### D.    CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

#### 1.    **Standing**

In his Complaint, the Plaintiff includes a laundry list of conditions at Bullock County Correctional Facility which allegedly violated his, and other unnamed inmates, constitutional rights to be free from cruel and unusual punishment.  (Doc. 1 at pp. 16-20).  These specific complaints are summarized at pp. 3-4, *supra*. In his complaint (Doc. 1) and responses to the Defendants' special reports and other submissions (Docs. 18, 24, 74, 93, 95, 100, 102 and 110), Plaintiff provides little factual detail for many of these claims. In the first instance, to the extent the Plaintiff seeks to present claims on behalf of other inmates, he lacks standing to raise claims for alleged violations of other inmates' constitutional rights.

> Standing involves two aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin [v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987)]. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin,* 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472 (1982); *Warth v. Seldin,* 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin,* 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

> To the extent the instant complaint seeks to assert claims relative to conditions of confinement [or actions] to which other inmates have been subjected at correctional facilities throughout the Alabama prison system, Plaintiff lacks standing to assert the constitutional rights of other persons. *Saladin, supra.; Allen v. Wright,* 468 U.S. 737, 751 (1984). The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Petitioner is not "asserting his ... own legal rights and interests [but] rather ... the

7

legal rights and interests of third parties." *Saladin,* 812 F.2d at 690. These claims, therefore, entitle Plaintiff to no relief.

*Charest v. Riley*, No. 2:10-CV-51-MHT, 2010 WL 797156, at *2–3 (M.D. Ala. Mar. 8, 2010). Thus, those claims brought by Plaintiff in this action for violations of other inmates' constitutional rights are due to be dismissed because the Plaintiff lacks standing to pursue those claims.

The Court will now turn its attention specifically to the Plaintiff's claims that the Defendants violated his constitutional rights by subjecting him to cruel and unusual punishment due to the medical care he received and other conditions to which he was subjected at Bullock Correctional Facility. After a thorough review of the briefs of parties and the evidence provided, the court concludes that the Plaintiff fails to establish deliberate indifference on the part of the Defendants for the reasons stated below.

2. **Respondeat Superior** Plaintiff names only Jefferson Dunn, ADOC Commissioner and Patrice Richie, Bullock Warden as Defendants. Defendant Dunn testified he does "not control the daily operations of the Bullock Correctional Facility." He further testified that "the operation of Bullock . . . is delegated to the warden and his or her staff." (Doc. 8-1 at p. 3). The law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the alternative, the plaintiff's allegations must demonstrate a causal connection between the defendant's actions and the alleged constitutional violation. *Hendrix v. Tucker,* 535 Fed. Appx. 803, 805 (11th Cir. 2013). Here, Plaintiff has failed to demonstrate that Defendant Commissioner Dunn has, through his own actions, violated Plaintiff's Eighth Amendment rights. He also has failed to show any causal

connection between Defendant Dunn's actions and the alleged violations.  Thus, the claims in this action against Commissioner Dunn are due to be dismissed.  The Court will hereafter address the Plaintiff's claims made against Defendant Warden Patrice Richie.

Plaintiff makes the general claim that he and other prisoners are denied access to medical care.  As discussed *supra*, Plaintiff has no standing to bring this claim on behalf of other prisoners. Thus, the court will address Plaintiff's general Eighth Amendment claim solely as it applies to him. First, to the extent Plaintiff seeks to hold Defendant Warden Richie liable for the medical treatment provided to Plaintiff by any unnamed medical defendant, he is entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that Warden Richie exerted some control over the manner in which any unnamed medical personnel rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .  A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft* 556 U.S. at 676 (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability). Thus, liability for actions of any unnamed medical defendant could attach to Warden Richie, only if she "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [her] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The record is clear that Warden Richie, did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided to Plaintiff. Indeed, Warden Richie testified, "[a]t no time have I ever been involved in any decisions related to the health care of Mr. Poores, nor have I provided any health care to Mr. Poores. At no time have I had any conversations with any medical providers with regard to medical care or treatment needed by Mr. Poores or provided to Mr. Poores." (Doc. 8-2 at p. 2). In light of the foregoing, Warden Richie can only be held liable for decisions of any unnamed medical personnel if she undertook actions which bear a causal relationship to the purported violation of Plaintiff's constitutional rights.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Warden Richie, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendant] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so."

10

*Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). Plaintiff has failed to present any such evidence.  Accordingly, the Court concludes that Plaintiff's claims for unconstitutional medical care premised upon respondeat superior must fail.[1]  As an alternative basis for dismissal, the Court will address, *infra,* Plaintiff's specific claims of deliberate indifference against Warden Richie premised on the medical care he received at Bullock.

      **3.  Deliberate Indifference**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone,* 326 F.3d at 1358.  "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a

---

[1] The Court also recognizes that Plaintiff's vague claims concerning "mixed party" strip searches, unnamed officials' use of violence and taunting of inmates, and the failure of unnamed guards to protect prisoner's belongings during raids or shakedowns, (Doc. 1 at pp. 12 and 18) fail to demonstrate on their face that Defendant Warden Richie was personally involved in these incidents or had any responsibility for these occurrences.  Indeed, Plaintiff fails to name as a Defendant any correctional officer allegedly involved in these incidents.  Further, Warden Richie testified that "[d]uring "Operation Restore" all dorms and inmates are searched.  Female law enforcement are not in the area where strip searching occurs." (Doc. 22-1 at p. 3).  Accordingly, the Court concludes that these claims are due to be dismissed because Plaintiff fails to demonstrate personal involvement by Defendant Warden Richie or a causal connection between her actions and the alleged deprivations.

constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talledega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions which may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the

Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id*. at 345–46. Although "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004). As with deliberate indifference claims, to demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The court previously identified the applicable standard relevant to establishment of the objective and subjective elements of an Eighth Amendment claim. *See supra*, at pp. 12-13.

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347. "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency. . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. In a case involving

conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *see Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 304–05 (1991) (emphasis in original). The Court will now address the Plaintiff's specific complaints alone and in combination with each other.

### 4.  <u>Specific Claims</u>

First, Plaintiff alleges that the Defendant Warden Richie failed to provide him adequate access to the law library.  The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by

officials. *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**. . . . [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to **discover grievances**, and to **litigate effectively** once in court. . . .   To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing.  *Id*. at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356.  "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . .  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357.  "[T]he Constitution does not require that prisoners

. . . be able to conduct generalized research, but only that they be able to present their grievances to the courts — a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "scrupulously respect[] the limits on [its] role, by not . .. thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id*. at 363 (internal quotations and citation omitted).

Poores lists a number of hinderances to his ability to use the law library, including an erratic schedule for the library and the notary, failure of Warden Richie to provide updated essentials including pens, and failure of Warden Richie to account for postage which delays legal mail. (Doc 1 at p. 16). However, he fails to allege any shortcomings with respect to the legal access provided to him during his confinement at Bullock which adversely affected his efforts to prosecute this or any other action in any state or federal court. Although Poores alleges that his schedule prevented him from being able to access the law library when it was open, he has not alleged nor shown that the lack of access in any way inhibited his preparation of legal documents, filing of pleadings or pursuing the instant action or any other state or federal action where he is a party. Indeed, Poores has filed numerous pleadings in this Court. (Docs. 18, 24, 74, 93, 95, 100, 102 and 110). Hence, Poores can not establish he suffered the requisite injury, *see Lewis*, 518 U.S. at 356, and the Defendant is therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show

any actual injury); *Chandler,* 926 F.2d at 1057 (An inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage.").

Second, Plaintiff alleges that Defendant Warden Richie failed to provide him adequate healthcare by failing to ensure he received his asthma medication and was able to use his CPAP machine. To prevail on a constitutional claim for deprivation of medical care in a § 1983 action, a prisoner must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Taylor v. Adams,* 221 F.3d, 1254,1258 (11th Cir. 2000); *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Farmer,* 511 U.S. at 837. Mere negligence or a failure to act reasonably is not enough. *Estelle*, 429 U.S. 105-06. Indeed, defendants must have the subjective intent to cause harm. *Id.* at 104. Consequently, in order to state an Eighth Amendment claim, Plaintiff must show he suffered from an objectively serious medical or mental health need and Defendant was subjectively indifferent to that need. The Court concludes that Plaintiff has failed to allege facts which show he suffered from an objectively serious medical condition during the relevant time period.

Indeed, Plaintiff does not allege that Warden Richie directly interfered with his health by ignoring a diagnosis or an obvious health condition. *See, Smith v. Murphy,* et al, 2:16-cv-1251, MHH-TMP (N.D. Ala. Nov. 1, 2016) citing *Fernandez v. Metro Dade Police Dept,* 397 Fed. Appx. 507, 511 (11th Cir. 2010) (Dismissing claims against defendant correctional officers, and defendant medical personnel for plaintiff's failure to demonstrate a serious medical need where there was no diagnosis by medical personnel requiring treatment and the alleged condition was not "so obvious that a lay person would recognize the need for medical treatment"). Thus, the court

concludes that Plaintiff fails to demonstrate facts which support the objective component of an Eighth Amendment Claim.

Additionally, the Plaintiff has failed to allege facts which support the subjective component of an Eighth Amendment claim. Plaintiff fails to allege how Defendant Warden Richie acted intentionally or recklessly to deny or delay medical care or she acted with "an attitude of deliberate indifference" towards his medical problems. *Taylor*, 221 F.3d at 1258. While Plaintiff complains about his lack of access to his CPAP machine and to a specific allergy medicine, he fails to present "at least some allegation of a conscious or callous indifference" by Defendant. *Zatler,* 802 F.2d at 400. To the extent Plaintiff claims that Defendant Warden Richie "should have perceived" a risk of harm to him but did not" is unavailing as ". . . the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference." *Farmer*, 825 U.S. at 838.

Indeed, the medical testimony before the Court demonstrates that while at Bullock, Plaintiff's sinus and allergy conditions were identified and treated.  (Doc. 59-1 at pp. 1-4). Specifically, Plaintiff was prescribed AIRDUO, as a substitute to the Dymista 137-50 spray prescribed by his free world ENT.  *Id.*  Also, Plaintiff's requests for a plug and accessible power sources for his CPAP machine were approved, and in May 2020, maintenance was sent to Plaintiff's dorm to check for problems associated with the power source for his CPAP. Maintenance confirmed the outlet was operable.  (Doc. 48-1 at p. 1).  Thus, the Court concludes that Plaintiff alleges no facts which indicate that Defendant had actual knowledge or awareness of an obvious risk to a serious medical need and failed to take steps to abate that risk or that she disregarded a substantial risk to his health.   Finally, Plaintiff's belief that he did not receive a proper course of treatment, without more, fails to state a violation of his constitutional rights. *See*

*Hamm*, 774 F.2d at 1574-1575 (The mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Third, Plaintiff claims that the food provided to the inmates "is not good enough for state officials"; drinks are not provided at every meal; inmates do not have enough time to eat meals; bugs are in the cafeteria and cafeteria lighting is uncovered.  "The Constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm,* 774 F.2d at 1575 (citation and quotation marks omitted). A well-balanced meal of enough nutritional value to preserve health satisfies this requirement. *Id*. "The fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*. (citation and quotation marks omitted). Indeed, the Director of Nutrition Services for the Alabama Department of Corrections testified as follows:

> "All meals are ensured to be nutritionally adequate.  Menu substitutions are made when warehouse food shortages, equipment repair, or equipment failure occur.  Any changes to the main entrée' are requested and approved by me.  Side food items are substituted using a chart with items equal to the item being substituted in nutritional value."

(Doc. 48-2 at p.1).  Additionally, Plaintiff claims that there are bugs in the dining area.  Warden Richie admits pests are occasionally spotted in the facility, including the dining room, but testified, "Pest Control Personnel are on contract and report to the facility every third Thursday of each month to control insects and prevent any infestations.  To my knowledge there have been no instances of a health hazard due to insects in the facility, including the dining room."  (Doc. 59-2 at p.2).  Finally, Warden Richie responds to Plaintiff's claim that Bullock allows him insufficient time to eat his meals by explaining "inmates are typically allotted 10 minutes to eat their meals, As Warden, I do recognize that there are occasions where more time is needed by an inmate due to various circumstances.  Whether more time is allotted is determined on a case-by-case basis."

*Id.*  Thus, the Court concludes that Plaintiff fails to demonstrate that the Defendants have been deliberately indifferent to Plaintiff's nutritional health needs.

Next, Plaintiff lists several claims, which this Court will collectively refer to as "potential safety" claims.  Those claims are as follows:

1) No smoke detectors in dorms;

2) Smokers not allowed access to smoking area outside the dorm;

3) Video cameras not present;

4) Sanitary and slip resistant foot ware not provided to inmates;

5) Blood bourne pathogen clean up kits not made available;

6) Mops and cleaning supplies are not sanitized;

7) Fans are not properly mounted.

The Court will first address Plaintiff's claim about access to smoking areas.  The Court understands this to be a claim for his exposure to second-hand smoke in the dorms. The United States Supreme Court has recognized that a prisoner "states a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  *Helling,* 509 U.S. at 35.  The *Helling* Court recognized that proof of both the objective and subjective elements were necessary to establish this Eighth Amendment claim.  *Id.*  Specifically, the Court stated that inmate-respondent's removal from a cell with a five-pack-a-day smoker was "plainly relevant" to whether respondent could show the objective factor that "he himself is being exposed to unreasonably high levels of ETS".  *Id.* at 35-36.  Further, the Court stated that with respect to the subjective factor, a prison smoking policy "will bear heavily on the inquiry into deliberate indifference."  *Id.* at 36.

Applying *Helling*, the Eleventh Circuit affirmed summary judgment for the prison authority defendants where the inmate, unlike the inmate in *Helling,* did not allege that his cellmate was a smoker and described his health issues as concern about the future health of "his eyes, lungs and heart."   *Kelley v. Hicks,* 400 F. 3d 1282, 1285 (11th Cir. 2005).   The *Kelley* Court was further persuaded that the inmate failed to meet his Eighth Amendment burden because the defendants explained "that the facility had a no-smoking policy in place, and that any inmate caught smoking inside would be disciplined."   *Id.*   Also, the *Kelley* Court noted that the inmate had been released from prison and thus was no longer exposed to ETS at the facility.   *Id.*   Finally, the *Kelley* Court held summary judgment was due because Kelley failed to offer any evidence to demonstrate "that his headaches were causally linked to his exposure to ETS."   *Id.*

Based on the reasoning of *Helling* and *Kelley*, this Court concludes that Poores fails to state an Eighth Amendment claim for his alleged exposure to second-hand smoke for the following reasons.   First, he does not allege facts which would allow this court to conclude that he regularly came into contact with ETS while housed at Bullock.   Indeed, he does not allege that he lived with a smoker, but rather states generally that the Defendants' fail to allow smokers access to smoking areas outside the dorm.   Thus, he claims the dorm where he lived was always smokey which aggravated his asthma.   Moreover, Plaintiff no longer is housed at Bullock, but has been transferred to Limestone.   Further, Warden Richie testified that Bullock abides by a Smoke/Tobacco Free Policy, which allows for the sale of tobacco products on site but prohibits smoking in any ADOC buildings and establishes designated smoking areas outside a building/institution where smoking is allowed.   The smoking policy is enforced to the best of the staff's ability in the areas where smoking is prohibited and pursuant to Administrative Regulation 403, violators of this policy are

disciplined.  (Doc. 59-2 at p. 2).  Thus, the Court concludes that Plaintiff's Eighth Amendment claims based upon his exposure to second-hand smoke fail.

With respect to Plaintiff's other "potential safety" claims, Warden Richie also addresses these in multiple affidavits filed with the Court.  Specifically, she states that while smoke detectors at Bullock maybe out of date and inoperable, the facility is safe and there are emergency procedures in place in case of fire.  (Doc. 59-2 at p. 2; 71-1 at p. 1--SOP:9-006 – Emergency Procedures in case of Fire).  Further, she testified that

> "[d]orm cleaners are provided cleaning supplies three days a week in order to comply with cleanliness and ADOC Sanitation Policy.  Inmates clean the dormitories daily throughout the day on each shift. . .  dorm cleaners are trained on the ADOC Sanitation policy with regards to cleanliness and are aware of procedures on dorm cleanliness.  Dorm inspections are done throughout the day by the shift commanders and the Executive Team to ensure compliance. Cleaning supplies are given to dorm cleaners Monday, Wednesday and Friday."

(Doc. 59-2 at p. 3).  She also explained that

> "[f]ans are not mounted on the wall; however, floor box fans are utilized in the dorms during summer months.  Depending on the size of the dorm, some dorms may have two and others three.  The dorm where inmate Poores is located has two box fans assigned to the dorm due to the size and space.  Inmates do not have personal fans for their use."

(Doc 22-1 at p. 4).  Accordingly, the Court concludes that Plaintiff has failed to demonstrate deliberate indifference by Defendant Warden Richie as to his "potential safety" claims addressed above.  Specifically, Plaintiff has not demonstrated that these circumstances created an objectively substantial risk of harm to him about which Warden Richie was aware and with this knowledge has consciously disregarded the risk.  *Farmer*, 511 U.S. at 837.

Plaintiff also lists several claims, which this Court will collectively refer to as Plaintiff's "desired recreation" claims.  Those claims are as follows:

1) Bullock's exercise area is not sufficient for the number of inmates and shade is not provided in workout area;

2) Inmates are not allowed two religious services a week;

3) Sports programs are not sufficiently shown on prison televisions;

4) Free literature is not provided to indigent inmates, like Plaintiff.

With respect to Plaintiff's claim that Bullock has failed to offer religious services twice

a week, Warden Richie explained that

> "[o]ver the past year we have been without a Chaplain which delayed many Chaplaincy Programs; however, within the past three months we are now receiving assistance from the Chaplain assigned to Kilby. The Chaplain reports twice a week to Bullock and has been working towards placing our program back in operation. The Religious is posted each month in the inmate newsletter and posted in the dormitories for any inmate that would like to attend classes as well as religious services."

(Doc. 22-1 at p. 2). Indeed, Plaintiff recognized that clergy had been unavailable for some period

of time at Bullock. (Doc. 1 at p. 16). He does not allege, nor do the facts demonstrate that

Defendant Warden Richie acted with deliberate indifference to this unfortunate circumstance.

Plaintiff also alleges that Warden Richie is deliberately indifferent because she failed to

ensure indigent inmates, like Plaintiff, received free literature. (Doc. 1 at p. 18). Warden Richie

testified that

> "[a]ll book requests must be ordered from the publisher. Inmates are required to follow the regulation regarding inmate mail should one request to receive books. A request slip must be sent to the captain for review and approval. Once the books that are approved arrive at the facility, the inmate signs the request slip stating that books ordered were received. I have no control over when a publishing company will send books requested by an inmate; however, upon their arrival they are distributed accordingly."

(Doc. 22-1 at p. 3). Furthermore, Warden Richie responded to Plaintiff's claim of insufficient

exercise space and shade cover by explaining that an enclosed gym and an outside yard are

available for exercise. Specifically, she stated that "[g]ym equipment such as basketball for

basketball games are readily available in the gym. Volleyball and other outside activities are done

on the yard. Exercise equipment, weights etc. are also outside on the yard." She also explained

that "[t]he canteen currently does not sell sunscreen as this may or may not be a popular item." *Id.*

Finally, Warden Richie responded to Plaintiff's claim about insufficient sports programing by

stating "[t]here are two televisions located in the dorms, one for sports and one for movies. These

activities are voted on by the inmates housed in the dorms." (Doc. 22-1 at p. 4).

Accordingly, the Court concludes that Plaintiff has failed to demonstrate deliberate

indifference by Defendant Warden Richie as to his "desired recreation" claims addressed above.

Specifically, Plaintiff has not demonstrated that these circumstances created an objectively

substantial risk of harm to him about which Warden Richie was aware and with this knowledge

has consciously disregarded the risk. *Farmer*, 511 U.S. at 837. More to the point, the Court

concludes that these conditions of confinement do not involve the wanton and unnecessary

infliction of pain. *Rhodes,* 452 U.S. at 346. Specifically, the Eighth Amendment is concerned

with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable

for prison confinement." *Id*. at 348 (citation omitted). These "desired recreation" claims fall flatly

outside those categories. Finally, the Court concludes that each and every claim discussed in this

memorandum opinion, whether considered singly or in combination, fail to meet the standard of

deliberate indifference necessary for Plaintiff to succeed in this action. *Wilson,* 501 U.S. at 304-

05.

### III. CONCLUSION

Accordingly, it ORDERED that

(1) Defendants' Motions for Summary Judgment (Docs. 8, 20, 22, 48, 59, 71) are

GRANTED and this action DISMISSED with prejudice.

(2) No costs are taxed.

A separate Final Judgment will be entered in accordance with this order.

DONE, this 1st day of December, 2022.

       /s/    Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE